FILED

2014 Aug-27  AM 08:46
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| LARRY SCOTT HUMPHREYS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 1:11-cv-04364-JEO |
| | ) | |
| JOHN RATHMAN, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

## <u>REPORT AND RECOMMENDATION</u>

This is an action on a habeas corpus petition filed pursuant to 28 U.S.C. § 2241 by a federal prisoner, Larry Scott Humphreys ("Humphreys" or "Petitioner"), acting *pro se*. (Doc.[1] 1 ("Petition" or "Pet.")). Humphreys challenges various aspects of his sentencing on federal charges, his sentencing by his state court judge, and certain actions by the Federal Bureau of Prisons ("BOP") and the United States Marshals, which purportedly have resulted in his being denied credit for certain time served while in custody. (*Id.*) As a part of his petition, he claims that the federal prosecutor agreed that his federal sentence should be served concurrently with his state sentence, and was not. (*Id.*) The cause now comes to be heard for a report and recommendation, *see* 28 U.S.C. § 636(b), Fed. R. Civ. P. 72(b)(1), LR 72.1(b)(3)(A), on the Government's response in opposition the petition. (Doc. 6).

---

[1]   References herein to "Doc(s). __" are to the document numbers assigned by the Clerk of the Court to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet in the court's Case Management/Electronic Case Files system.

## I.  BACKGROUND

**A.     Procedural Background**

Humphreys was incarcerated at the Federal Correctional Institution in Talladega, Alabama at the time he filed the present petition.  He is serving a 430-month term of imprisonment following his plea of guilty to two counts of Armed Bank Robbery and two counts of using or carrying a firearm during and in relation to a crime of violence.  (Ex. 2).[2]

Petitioner's convictions and sentence are a consequence of his arrest in Hamilton County, Tennessee by "non-federal authorities" on aggravated robbery charges.  (Ex. 3 at ¶ 5).[3]  He was indicted on the above federal charges in the United States District Court for the Eastern District of Tennessee.  On October 26, 2001, he was transferred from state custody to the United States Marshals Service pursuant to a writ of habeas corpus.  (*Id*.)  Humphreys pled guilty, and on November 18, 2002, was sentenced to his 430-month sentence.  (*Id*. at ¶ 6).  The federal judgment and commitment order does not mention concurrent sentencing.  (*Id*.)  Humphreys was returned to the state authorities on December 11, 2002, and a federal detainer was lodged against him.  (*Id*.)

He did not file a direct appeal of his conviction or sentence.  *Humphreys v. United States*, 238 F. App'x 134 (6th Cir. 2007).  The judgment became final on December 23, 2002.  *Id*. at 136.

---

[2]     The exhibits referenced herein are located at document 6 (Defendant's Response) unless noted otherwise.

[3]     Exhibit 3 is the declaration of Marcus Boudreaux, a Management Analyst at the Designation and Sentence Computation Center for the Federal Bureau of Prisons ("BOP").  (Ex. 3 at ¶ 1).

On May 12, 2004, he filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 with the sentencing judge, United States District Judge R. Allan Edgar. *Humphreys*, 238 F. App'x at 136. He alleged 'ineffective assistance of counsel, *Brady* violations, and a host of other allegations relating to his alleged unknowing and unintelligent guilty plea (the records show sixteen claims)." *Id.* It was dismissed as untimely on March 21, 2005. *Id.* at 137. He appealed, and the Sixth Circuit Court of Appeal vacated and remanded the case, finding on June 29, 2007, that the trial court did not properly determine the statutory timeliness of Humphreys' motion.

Humphreys was sentenced in Hamilton County, Tennessee Criminal Court on six counts of aggravated robbery to a five-year term of incarceration. He was transferred to the Tennessee Department of Corrections ("TDOC") to serve his state sentence on October 13, 2005. For some unexplained reason, his transfer did not include his federal detainer paperwork. He was allowed 1,226 days of jail credit for the periods of September 27, 2001 to October 26, 2001, and from June 26, 2002, to October 3, 2005. Because of the absence of the federal detainer, he was released from state custody on May 23, 2006, at the expiration of his state sentence. (*Id.* at ¶ 7).

Humphreys was arrested by the United States Marshals on June 9, 2006. Accordingly, the BOP commenced the running of his sentence on this day – when he came into the exclusive control of federal authorities. (*Id.* at ¶ 8).

Following remand of his § 2255 motion, the trial court on October 14, 2008, found that the motion was time-barred. *Humphreys v. United States*, 2008 WL 4601577 (E.D. Tenn. 2008). The court rejected his contention that the government hid from him the fact that it lost the evidence in his case, finding that "there is absolutely no proof supporting this allegation." *Id.* at

3

*11.  It also found that he was not entitled to equitable tolling.  *Id*. at *14.  Finally, the court

denied him leave to appeal the dismissal *in forma pauperis*.  *Id*.  According to Humphreys, he

filed a notice of appeal to the Sixth Circuit Court of Appeals in November 2008.  (Doc. 1 at 29 of

33 (Ex. B)).  The court denied his certificate of appealability on April 1, 2009.  (*Id*.)

Humphreys also filed other post-conviction petitions in the Eastern District of Tennessee,

including a "writ of *audita querela*, a Rule 60(b) motion, and a successive 2255 motion.  They

were all dismissed as procedurally barred."[4]  (Doc. 1 at 3; Ex. B thereto).  There is no indication

in the record or on Westlaw that Humphreys appealed the dismissal.  *See* Doc. 1 at 3.

Humphreys filed the present application for a writ of habeas corpus on December 30,

2011, claiming that (1) the federal prosecutor breached his plea agreement, (2) his due process

rights were violated, (3) he was improperly exposed to installment sentences, and (4) the

government created an impediment to his perfecting a § 2255.  (Doc. 1 at 6-7).  The court entered

an order requiring the United States to show cause why the relief requested by Humphreys should

not be granted.  (Doc. 2).

Following the initiation of this action and issuance of the show cause order, BOP Analyst

Boudreaux realized Humphreys was not receiving jail credit towards his federal sentence for

certain periods to which he was entitled.  Accordingly, he credited him for the period from

September 25, 2001, through September 26, 2001 and from October 27, 2001 through June 25,

2002.  (*Id*. at ¶ 9).  Humphreys now has a projected release date on February 11, 2037, via good

conduct time release.  (Ex. 1 at 3).

---

[4]        According to Humphreys they were dismissed on September 13, 2011.  (Doc. 1 at 3).

Humphreys filed an addendum to his federal petition on March 12, 2012, again alleging that the prosecutor (1) the prosecutor breached the plea agreement in that he should have received concurrent sentences, (2) due process was violated, (3) he was exposed to an installment sentence due to his release from state custody, and (4) the conduct of the United States was an impediment to his perfecting an ineffective assistance of counsel challenge pursuant to 28 U.S.C. § 2255.  (Docs. 4 & 10 at 3).

Premised on the allegations in his pleadings concerning concurrent sentencing, the sentencing court was contacted by the BOP to determine the court's position concerning retroactive designation of the federal sentence.  (Ex. 3 at ¶ 11; Ex. 13).  On March 13, 2012, the BOP received a response from the sentencing judge, United States District Court Judge R. Alan Edgar, stating that premised on Humphreys' "extremely lengthy criminal record," the federal sentence would most likely have been imposed consecutive to the state sentence.  (Ex. 3 at ¶ 11; Ex. 14).  He did, however, "leave it to [the BOP] to make any decision that you think is warranted about a retroactive designation."  (*Id.*)  After reviewing Humphreys' case under the relevant considerations in 18 U.S.C. § 3621(b), the BOP decided that retroactive concurrent designation was not appropriate.  (Ex. 3 at ¶ 12; Ex. 15).

On April 12, 2012, Humphreys filed an Institution Administrative Remedy form requesting that his state sentence run concurrent with his federal sentence.  (Ex. 16 at ¶ 4).  It was denied on April 17, 2012.  (*Id.*)  Humphreys did not file any administrative appeal of the decision.

The United States responded to the court's order to show cause in this matter on May 9, 2012, asserting that the petition was due to be dismissed and denied because (1) Humphreys has

5

not exhausted his administrative remedies, (2) he is not entitled to any further credit against his federal sentence, and (3) he is not entitled to *nunc pro tunc* sentence designation.  (Doc. 6).  The court then afforded Humphreys an opportunity to respond.  (Doc. 7).  Humphreys responded to the arguments offered by the defendant in three documents.  (Docs. 8, 9 & 10).[5]  He asserts: (1) the government has not responded to his first three claims, (2) the government's response is "off the mark and irrelevant to [his] problems," (doc. 9 at 2), (3) it was the United States Marshals who failed to act properly in allowing him to be released in 2006 (doc. 8, doc. 9 at 2), (4) BOP administrative remedies are irrelevant to his challenge to the prosecutor's failure to follow his plea agreement and his improper release from custody (doc. 8 at 2-3), and (5) he dropped the administrative charge with the BOP on the representation of his administrative remedy officer that he should do so with the option to file it later after the court made a decision about vacating his plea (*id*. at 3).  Humphreys also states that the primary purpose of his 2241 petition is to vacate his plea and "expose the harm done to [him] when the gov[ernment] allowed [him] to go home," which resulted in the loss of his property that was needed to prove his § 2255 petition was timely.  (Doc. 8 at 3-4).  Finally, Humphreys notes that the state court sentencing judge sentenced him with the understanding that he was already serving a federal sentence.  (*Id*. at 4).

## B.    Offense Conduct

The following are the summary facts detailed in his signed plea agreement:

---

[5]    The responses are confusing as the first one – "Addendum to Petitioner's Rebuttle" (sic) – is dated May 20, 2012, the second one – "Final Reply" – is dated May 17, 2012, and the third one – "Response to Court's Order" – is dated May 30, 2012.  (Doc. 8, 9 & 10).

From on or about June 30, 2001, through September 21, 2001, the defendant committed numerous armed robberies in the Chattanooga, Tennessee area and elsewhere.  On August 17, 2001, a white male, later identified as the defendant, entered the First Tennessee Bank located at 1 Cherokee Boulevard, Chattanooga, Tennessee, located in the Eastern District of Tennessee, a bank whose deposits were then insured by the Federal Deposit Insurance Corporation. The defendant robbed a teller using a demand note and showing her a .25 caliber semi-automatic pistol, which was stuck in his right pocket. The total amount of cash taken was $3,623.10.  The defendant left the scene on a bicycle.

On September 21, 2001, a white male, later identified as the defendant, entered the Sun Trust Bank, located at 61 North Market Street, Chattanooga, Tennessee, in the Eastern District of Tennessee, a bank whose deposits were then insured by the Federal Deposit Insurance Corporation, approached victim teller, and produced a demand note which read, "100's and 50's, gun in pocket." The defendant showed the victim teller a black semi-automatic pistol and left with $1,947.00 in U.S. currency.  As the defendant made his escape, the dye pack exploded and the defendant discarded the bag containing the money and his clothing into nearby woods. The defendant disappeared in the crowds in Coolidge Park.

On around the 23rd of September, 2001, the defendant called a female friend and left a message on her answering machine tape that he had robbed a Payless Shoe Store in Georgia, but the job he did on Friday "blew up on him."

Law enforcement also located two witnesses who indicated that the defendant had admitted to them that he had committed the robberies.

During a search warrant for the defendant's trailer, law enforcement officers found another gun, a ponytail hat used in one of the other robberies, false teeth, pieces of paper with practice demand notes written on them, a phone book with the victim banks circled, a bicycle he used during one of the getaways, and some other items.

The defendant was arrested, Mirandized and admitted to committing the bank robbery.

*Humphreys*, 2008 WL 4601577 at *2-3.

## II. DISCUSSION

**A.      Exhaustion of Administrative Remedies**

To the extent the BOP is vested by statute with authority over any of Petitioner's claims, *e.g.* claims related to the calculation of his sentence, counsel for the defendant initially argues that the petition should be dismissed for failure to exhaust administrative remedies.  (Doc. 6 at 8).  Specifically, counsel argues that this action is due to be dismissed for lack of jurisdiction because Humphreys has allegedly failed to exhaust administrative remedies available through the BOP before filing suit.  (*Id*. at 8-9).  Humphreys has responded, arguing that he has done enough to exhaust or that exhaustion should be excused.  Frankly, the undersigned believes that this action is subject to resolution much more cleanly and easily on the merits than based upon exhaustion.  However, whether or not this court may proceed directly to the merits depends upon whether the exhaustion question is characterized as "jurisdictional," as explained below.

A federal prisoner is generally authorized to contest the manner by which his sentence is executed by way of a petition filed pursuant to the general habeas statute, 28 U.S.C. § 2241.  *See Antonelli v. Warden, USP Atlanta*, 542 F.3d 1348, 1351 & n. 1 (11th Cir. 2008); *Bishop v. Reno*, 210 F.3d 1295, 1304 n. 14 (11th Cir. 2000); *see also Sester v. United States*, ___ U.S. ___, ___, 132 S. Ct. 1463, 1473 (2012).  To the extent that a prisoner may contest a BOP decision regarding his sentencing computation, most courts have held that such amounts to a claim challenging the execution of his sentence that may be raised by a § 2241 habeas petition.

Claims for § 2241 habeas relief, however, are subject to a requirement that the federal prisoner first exhaust available administrative remedies.  *See Skinner v. Wiley*, 355 F.3d 1293, 1295 (11th Cir. 2004) (per curiam); *Gonzalez v. United States*, 959 F.2d 211, 212 (11th Cir.

1992) (per curiam); *Kyle v. Hanberry,* 677 F.2d 1386, 1391-92 (11th Cir. 1982); *Burnett v. United States Bd. of Parole*, 491 F.2d 966, 967 (5th Cir. 1974)[6] (per curiam); *Pace v. Clark*, 453 F.2d 411, 411-12 (5th Cir. 1972) (per curiam).  Exhaustion of administrative remedies serves two purposes.  *See McCarthy v. Madigan*, 503 U.S. 140, 145 (1992), *superseded by statute on other grounds as stated in Booth v. Churner*, 532 U.S. 731, 739-41 (2001).  First, it protects administrative agency authority by "recogniz[ing] the notion, grounded in deference to Congress' delegation of authority to coordinate branches of Government, that agencies, not the courts, ought to have primary responsibility for the programs that Congress has charged them to administer."  *Id.*  Second, "exhaustion promotes judicial efficiency," both by affording an agency the opportunity to correct its own errors prior to the necessity of judicial intervention and by producing "a useful record for subsequent judicial consideration."  *Id.*  In this vein, the BOP has established a multi-tiered administrative remedy program whose purpose is "to allow an inmate to seek formal review of an issue relating to any aspect of his ... confinement."  28 C.F.R. § 542.10(a).  *See* 28 C.F.R. §§ 542.10 through 542.19; *Irwin v. Hawk*, 40 F.3d 347, 349 n. 2 (11th Cir. 1994).

As argued by counsel, the Eleventh Circuit has stated in multiple published opinions that exhaustion of administrative remedies is not only a precondition to the granting of habeas relief to a federal prisoner under § 2241 but is also a "jurisdictional" prerequisite necessary for a federal court to entertain the action.  *See United States v. Williams*, 425 F.3d 987, 990 (11th Cir. 2005) (per curiam); *Skinner*, 355 F.3d at 1295; *Winck v. England*, 327 F.3d 1296, 1300 n. 1 (11th Cir. 2003); *TVA v. United States EPA*, 278 F.3d 1184, 1202 (11th Cir. 2002), *opinion withdrawn in part*, 336 F.3d 1236 (11th Cir. 2003); *Gonzalez*, 959 F.2d at 212; *see also Boz v. United*

---

[6]        The decisions of the former Fifth Circuit handed down before October 1, 1981 are binding in the Eleventh Circuit.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

*States*, 248 F.3d 1299, 1300 (11th Cir. 2001) (per curiam).  If binding, that "jurisdictional" label

carries significant consequences.  "Characterizing a rule as jurisdictional renders it unique in our

adversarial system."  *Sebelius v. Auburn Reg. Med. Ctr.*, ___ U.S. ___, ___, 133 S. Ct. 817, 824

(2013).  The Supreme Court has explained:

> "Jurisdiction" refers to "a court's adjudicatory authority."  *Kontrick v. Ryan*, 540 U.S.
> 443, 455 (2004).  Accordingly, the term "jurisdictional" properly applies only to
> "prescriptions delineating the classes of cases (subject-matter jurisdiction) and the
> persons (personal jurisdiction)" implicating that authority.  *Ibid.*; *see also Steel Co. v.
> Citizens for Better Environment*, 523 U.S. 83, 89 (1998) ("subject-matter jurisdiction"
> refers to "the courts' statutory or constitutional power to adjudicate the case" (emphasis
> in original)); *Landgraf v. USI Film Products*, 511 U.S. 244, 274 (1994) ("[J]urisdictional
> statutes 'speak to the power of the court rather than to the rights or obligations of the
> parties' " (quoting *Republic Nat. Bank of Miami v. United States*, 506 U.S. 80, 100 (1992)
> (THOMAS, J., concurring))).

*Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 160-61 (2010).

One such consequence of import here is that, if exhaustion of administrative remedies

were deemed jurisdictional, this court would be duty-bound to avoid addressing the merits of any

substantive claims for relief prior to resolving any exhaustion issues, no matter how simple the

merits determination or how thorny the exhaustion questions.  *See Steel Co.*, 523 U.S. at 92-103;

*Belleri v. United States*, 712 F.3d 543, 547 (11th Cir. 2013); *Williams v. Warden, Fed. BOP*, 713

F.3d 1332, 1337-38 (11th Cir. 2013); *Friends of the Everglades v. EPA*, 699 F.3d 1280, 1288-89

(11th Cir. 2012); *see also Winck*, 327 F.3d at 1299; *Hegney v. Holder*, 177 F. App'x 901, 903

(11th Cir. 2006); *Jaimes v. United States*, 168 F. App'x 356, 358 (11th Cir. 2006); *Hicks v.

Jordan*, 165 F. App'x 797,798 (11th Cir. 2006).  By contrast, if exhaustion is not jurisdictional,

federal courts are free to bypass the issue and simply deny relief on the merits.  *See Woodford v.

Ngo*, 548 U.S. 81, 101 (2006); *Loggins v. Thomas*, 654 F.3d 1204, 1215 (11th Cir. 2011).

While the Eleventh Circuit has indicated that exhaustion of administrative remedies is

jurisdictional in § 2241 cases brought by federal prisoners, it is questionable whether this court is

actually obligated to abide by that characterization.  "Recognizing that the word 'jurisdiction' has been used by courts ... to convey 'many, too many, meanings,' *Steel Co.*[, 523 U.S. at 90] (internal quotation marks omitted), [the Supreme Court has] cautioned ... against profligate use of the term.  Not all mandatory 'prescriptions, however emphatic, are ... properly typed jurisdictional.'"  *Union Pacific R. Co. v. Brotherhood of Locomotive Eng'rs and Trainmen Gen. Committee*, 558 U.S. 67, 81 (2009) (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 510 (2006)).  It appears that only two published Eleventh Circuit cases actually involve both (1) a § 2241 habeas petition brought by a federal prisoner and (2) mention exhaustion as jurisdictional: the per curiam decisions in *Skinner* and *Gonzalez*.[7]  In neither case, nor in any other published decision the undersigned could locate, did the Eleventh Circuit or the former Fifth Circuit provide any legal analysis regarding why exhaustion of administrative remedies is a *jurisdictional* prerequisite where a federal prisoner seeks relief related to the execution of his sentence, by way of habeas or otherwise.[8]  *Skinner* relies solely on *Gonzalez* for the proposition that exhaustion is

---

[7]    The Eleventh Circuit has also cited *Gonzalez* and *Skinner* to support a jurisdictional characterization of administrative exhaustion in habeas proceedings in a host of unpublished decisions involving federal prisoners.  *See Austin*, 529 F. App'x at 994-95; *United States v. Nickson*, 521 F. App'x 867, 869 (11th Cir. 2013); *McGee v. Warden, FDC Miami*, 487 F. App'x 516, 517-18 (11th Cir. 2012); *Cruz-Pagan v. Warden, FCC Coleman-Low*, 486 F. App'x 77, 78-79 (11th Cir. 2012); *Nichols v. Warden, FCC Coleman-Low*, 458 F. App'x 844, 845 (11th Cir. 2012); *Krist v. Eichenlaub*, 386 F. App'x 920, 923 (11th Cir. 2010); *Rey v. Warden, FCC Coleman-Low*, 359 F. App'x 88, 90-91 (11th Cir. 2009); *Martin v. Zenk*, 244 F. App'x 974, 977-78 (11th Cir. 2007); *United States v. Luna-Mora*, 180 F. App'x 847, 849 (11th Cir. 2006); *Hegney*, 177 F. App'x at 903; *Jaimes*, 168 F. App'x at 358; *Hicks*, 165 F. App'x at 798-99.  Of course, none of those unpublished decisions are binding authority.  *See United States v. Izurieta*, 710 F.3d 1176, 1179 (11th Cir. 2013).

[8]    *Gonzalez* is the first habeas corpus case brought by a federal prisoner in which the Eleventh Circuit deemed exhaustion of administrative remedies to be jurisdictional.  That pronouncement is traceable to a line of non-habeas cases in which federal prisoners raised statutory claims contesting an allegedly erroneous calculation of sentence credit by the BOP.  *See United States v. Lucas*, 898 F.2d 1554, 1555-56 (11th Cir. 1990); *United States v. Flanagan*, 868 F.2d 1544, 1546-47 (11th Cir. 1989); *United States v. Mitchell*, 845 F.2d 951, 952  (11th Cir. 1988); *United States v. Mathis*, 689 F.2d 1364 (11th Cir. 1982).  The first case in that family, *Mathis*, held that the prisoner's failure to exhaust administrative remedies deprived the district court of jurisdiction to hear his claim, prompting the court of appeals to vacate the judgment denying relief on the merits and to remand the action with instructions to dismiss.  689 F.2d at 1365-66.  *Mathis*, however, did not proffer any analysis for treating exhaustion as jurisdictional, and the brief opinion cites only four cases: *Burnett, supra*; *O'Connor v. Attorney Gen. of the United States*, 470 F.2d 732 (5th Cir. 1972); *Brown v. United States Attorney General*, 457 F.2d 938 (5th Cir. 1972); and *United States v. Morgan*, 425

11

jurisdictional, and in both cases the reference was made in passing; nothing was truly at stake because no party raised an argument that depended upon whether exhaustion went to the court's power to hear the claim.  *See Skinner*, 355 F.3d at 1295; *Gonzalez*, 959 F.2d at 212.  As such, the ultimate disposition of the respective causes, *i.e.*, the denial of habeas relief based on the prisoner's failure to exhaust administrative remedies, would have been equally justified if exhaustion were treated as merely a prudential, non-jurisdictional rule.[9]  The Supreme Court has advised that such unrefined "drive-by jurisdictional rulings" are to be accorded "no precedential effect."  *Arbaugh*, 546 U.S. at 511 (quoting *Steel Co.*, 523 U.S. at 91).  As a result, it is arguable that the Eleventh Circuit's language pronouncing exhaustion of administrative remedies to be jurisdictional in § 2241 cases brought by federal prisoners might be disregarded as dicta.

Even assuming, however, that the Eleventh Circuit references to exhaustion of administrative remedies as jurisdictional in this setting rise to the level of a holding, Eleventh Circuit precedent "is no longer binding once it has been substantially undermined or overruled by

---

F.2d 1388 (5th Cir. 1970).  While those authorities recognized an administrative exhaustion requirement for federal prisoners seeking sentence credit, none suggested that exhaustion truly was jurisdictional, as opposed to merely a prudential, nonjurisdictional requirement.  *See Burnett*, 491 F.2d at 967; *O'Connor*, 470 F.2d at 734; *Brown*, 457 F.2d at 940; *Morgan*, 425 F.2d at 1390.

[9]   There appear to be only two Eleventh Circuit cases in this area in which the question of whether a federal prisoner's failure to exhaust administrative remedies was jurisdictional mattered to how the case was approached.  The earlier of the two, *United States v. Herrera*, 931 F.2d 761 (11th Cir. 1991), was a direct appeal in which the Eleventh Circuit held that, because administrative exhaustion was jurisdictional, citing *Lucas*, the government could raise the issue for the first time on appeal to defeat the prisoner's claim for sentence credit under 18 U.S.C. § 3585(b).  931 F.2d at 764.  However, in *Rodriguez v. Lamer*, 60 F.3d 745 (11th Cir. 1995), which also involved a claim under § 3585(b) but was styled as a § 2241 habeas action, the Eleventh Circuit took a contrary approach.  There the court held that the government had waived the exhaustion issue by failing to raise it below.  *Rodriguez*, 60 F.3d at 747.  By so doing, the Eleventh Circuit *necessarily* treated exhaustion as nonjurisdictional because the issue could not have been waived or forfeited otherwise.  *See Auburn Reg. Med. Ctr.*, 133 S. Ct. at 824; *Kontrick*, 540 U.S. at 455.  Admittedly, *Rodriguez* did so without acknowledging either the existence of *Herrera* or the possibility that exhaustion might be jurisdictional.  *Rodgriguez* also ultimately affirmed the denial of relief on the merits.  *Id.* at 748-50.  Under the prior panel rule, *Herrera* would control over *Rodriguez* to the extent they cannot be reconciled with each other.  *See United States v. Ohayon*, 483 F.3d 1281, 1289 (11th Cir. 2007).  That being said, as a habeas action, *Rodriguez* is at least potentially distinguishable from *Herrera*, a direct appeal.  On the other hand, it is not apparent why that procedural nicety should make a difference to whether exhaustion is treated as jurisdictional given that the substantive claim, for sentence credit under § 3585(b), was the same in both cases.

12

... Supreme Court jurisprudence." *United States v. Madden*, 733 F.3d 1314, 1320 (11th Cir. 2013) (quoting *United States v. Gallo*, 195 F.3d 1278, 1284 (11th Cir. 1999)).  And on that score, a holding that a federal prisoner's failure to exhaust administrative remedies before seeking relief related to the execution of his sentence amounts to a jurisdictional defect is simply irreconcilable with numerous Supreme Court decisions that the Eleventh Circuit has never confronted in this area of the law.

Federal courts "are not at liberty to except from [habeas corpus jurisdiction] any cases not plainly excepted by law." *Ex parte Yerger*, 8 Wall. 85, 102 (1869) (quoted in *INS v. St. Cyr.*, 533 U.S. 289, 298 (2001)).  As such, where a case would otherwise fall within the scope of § 2241, there is a "longstanding rule requiring a clear statement of congressional intent to repeal habeas jurisdiction." *St. Cyr.*, 533 U.S. at 298.  The Supreme Court has also stated that it considers requirements that a prisoner must "exhaust[ ] alternative remedies before [he] can seek federal habeas relief" to present only "prudential barriers to habeas corpus review," rather than a "jurisdictional bar." *Boumediene v. Bush*, 553 U.S. 723, 793 (2008).  It has long been recognized that such a nonjurisdictional characterization applies to the requirement, originally court-created but now codified by statute, that state prisoners exhaust state remedies prior to being granted federal habeas relief.  S*ee* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-43 (1999), *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Granberry v. Greer*, 481 U.S. 129, 131 (1987).  However, the Supreme Court has recently made clear that it considers the similar requirement that those in military custody exhaust military remedies before seeking habeas relief under § 2241, to be likewise merely a prudential, non-jurisdictional barrier, even though that requirement is not grounded on the federalism concerns underlying the exhaustion requirement

for state prisoners.  *See Boumediene*, 553 U.S. at 793 (*citing Schlesinger v. Councilman*, 420 U.S. 738, 758 (1975)); *accord Winck*, 327 F.3d at 1299-1300.

The Supreme Court has also more broadly adopted a "bright line" rule that courts are to treat all statutory limitations and requirements as nonjurisdictional unless "Congress has 'clearly state[d]' that the rule is jurisdictional."  *Auburn Reg. Med. Ctr.*, 133 S. Ct. at 824 (quoting *Arbaugh*, 546 U.S. 515-16).  That principle applies in habeas cases.  *See Gonzalez v. Thaler*, ___ U.S. ___, ___, 132 S. Ct. 641, 648-49 (2012).  The Supreme Court has also indicated that it applies to statutory "threshold requirements that claimants must complete, or exhaust, before filing a lawsuit," resulting in a holding that the Copyright Act's statutory registration requirement, *see* 17 U.S.C. § 411(a), is nonjurisdictional.  *Reed Elsevier*, 559 U.S. at 166.  The Supreme Court has similarly held that the statutory requirement set forth in the Prison Litigation Reform Act ("PLRA") that prisoners exhaust administrative remedies before bringing a federal action challenging conditions of confinement, *see* 42 U.S.C. § 1997e(a), is a nonjurisdictional affirmative defense.  *See id.*; *Jones v. Bock*, 549 U.S. 199, 211 (2007); *Woodford*, 548 U.S. at 83); *also cf. Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) (statutory time periods for filing an administrative claim of discrimination with the Equal Employment Opportunity Commission is nonjurisdictional).

It also follows, *a fortiori*, that nonstatutory conditions to proceeding in court created by the judiciary itself are also to be treated as nonjurisdictional.  The Supreme Court has recognized that because "only Congress may determine a lower federal court's subject-matter jurisdiction," it is "axiomatic" that "court-prescribed rules of practice and procedure in the federal courts ... do not create or withdraw jurisdiction."  *Kontrick*, 540 U.S. at 452-53; *see also Eberhart v. United States*, 546 U.S. 12, 15-19 (2005); *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365,

14

370 (1978); *United States v. Sherwood*, 312 U.S. 584, 589-90 (1941); *accord Jackson v. Seaboard Coast Line R. Co.*, 678 F.2d 992, 1004 n. 17 (11th Cir. 1982) ("[O]nly Congress can modify the requirements that must be satisfied to enable a court to exercise dominion over a claim." (citations omitted)).  In other words, court-created conditions and requirements for relief, including those related to exhaustion, are only prudential and discretionary, not jurisdictional in the strict sense.  *See McCarthy*, 503 U.S. at 144 ("[W]here Congress has not clearly required exhaustion, sound judicial discretion governs."); *United States v. Lopez*, 562 F.3d 1309, 1312 (11th Cir. 2009) ("The Supreme Court has made clear that only rules of limitation that implement a statutory directive may be mandatory and jurisdictional"); *Richardson v. Reno*, 162 F.3d 1338, 1373-74 (11th Cir. 1998) ("[J]udicially developed exhaustion requirements might be waived for discretionary reasons by courts"), *vacated*, 526 U.S. 1142 (1999), *reaffirmed in relevant part*, 180 F.3d 1311, 1314 (11th Cir. 1999), *overruled on other grounds by St. Cyr*, 533 U.S. at 312-14, *as stated in Bejacmar v. Ashcroft*, 291 F.3d 735, 736-37 (11th Cir. 2002).  *See also, e.g.*, *Withrow v. Williams*, 507 U.S. 680, 686 (1993) (judge-created rule of *Stone v. Powell* limiting "federal habeas relief was not jurisdictional in nature, but rested on prudential concerns counseling against the application of the Fourth Amendment exclusionary rule on collateral review"); *Collins v. Youngblood*, 497 U.S. 37, 41 (1990) (judge-created rule of *Teague v. Lane*, prohibiting retroactive application of new rules to cases on collateral review in federal court, "is grounded in important considerations of federal-state relations" and "is not jurisdictional"); *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004) ("prudential standing" doctrine "embodies judicially self-imposed limits on the exercise of federal jurisdiction" (internal quotation marks omitted)).  Accordingly, the Supreme Court has consistently treated court-imposed exhaustion requirements as nonjurisdictional.  *See Boumediene*, 553 U.S. at 793

(contrasting prudential exhaustion-of-military-remedies requirement for habeas relief to a jurisdictional bar); *Sims v. Apfel*, 530 U.S. 103, 106 n. 1 (2000) ("We agree with the parties that, even were a court-imposed issue-exhaustion requirement proper, the Fifth Circuit erred in treating it as jurisdictional" (citing *Mathews v. Eldridge*, 424 U.S. 319, 328 (1976)); *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 16 n. 8 (1987) (judicially developed requirement that a party exhaust in Tribal Court before seeking relief in federal court is "required as a matter of comity, not as a jurisdictional prerequisite")).

It is thus apparent that any requirement that a claimant exhaust administrative remedies before suing in federal court, whether under the habeas statutes or otherwise, cannot be treated as jurisdictional unless (1) the exhaustion requirement arises from a federal statute and (2) it is clear that Congress intended for such exhaustion be treated as jurisdictional. *See Gray v. United States*, 723 F.3d 795, 798 (7th Cir. 2013); *Abraitis v. United States,* 709 F.3d 641, 645 (6th Cir. 2013); *Zhong v. United States Dep't of Justice*, 480 F.3d 104, 120-21 (2d Cir. 2007); *see also Vermont Dept. of Public Service v. United States*, 684 F.3d 149, 156 (D.C. Cir. 2012); *Metropolitan Life Ins. Co. v. Price*, 501 F.3d 271, 279 (3d Cir. 2007); *Crowell v. Shell Oil Co.*, 541 F.3d 295, 309 & n. 58 (5th Cir. 2008). However, to the extent that Humphrey seeks to proceed under 28 U.S.C. § 2241, no statute requires a federal prisoner to exhaust administrative remedies before bringing a habeas action related to the execution of his sentence. Rather, the exhaustion requirement in that context is of judicial creation.[10]  *See Jones*, 495 F. Supp. 2d at

---

[10]   The habeas statutes do contain a statutory requirement that prisoners in custody pursuant to the judgment of a state court must exhaust available state remedies before being entitled to a grant of federal habeas relief. *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-43 (1999).  However, that statutory exhaustion requirement is both (1) itself nonjurisdictional, *see Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Granberry v. Greer*, 481 U.S. 129, 131 (1987), and (2) inapplicable to habeas claims not subject to § 2254, *see Winck*, 327 F.3d at 1299-1300, which includes challenges to the execution of a federal sentence under § 2241.  *See Antonelli*, 542 U.S. at 1351-52 & n. 1. The PLRA also contains a statutory requirement that prisoners exhaust administrative remedies before bringing an action with respect to prison conditions. 42 U.S.C. § 1997e(a).  However, the PLRA does not apply to habeas cases.  *Skinner*, 355 F.3d at 1295.

16

1298-99; *Garza*, 596 F.3d at 1203; *Lueth v. Beach*, 498 F.3d 795, 797 n. 3 (8th Cir. 2007);

*Brown v. Rison*, 895 F.2d 533, 535 (9th Cir. 1990), *overruled on other grounds*, *Reno v. Koray*,

515 U.S. 50, 54-55 (1995); *Jackson v. Carlson*, 707 F.2d 943, 949 (7th Cir. 1983); *cf. Winck*, 327

F.3d at 1299-1300 (holding that exhaustion of military remedies was a nonstatutory, prudential

requirement in § 2241 habeas action brought by a member of the military seeking release from

his enlistment contract and was thus nonjurisdictional); *Dill v. Holt*, 371 F.3d 1301, 1302 (11th

Cir. 2004) ("[T]he statutory language of § 2241 itself does not contain a requirement that a

petitioner exhaust state remedies").  Because the Supreme Court has made clear that judicially-

created claims processing rules and conditions are, categorically speaking, not jurisdictional, the

court-imposed administrative exhaustion requirement for federal prisoners seeking habeas relief

falls into the nonjurisdictional camp.  *See Ward v. Chavez*, 678 F.3d 1042, 1045 (9th Cir. 2012);

*Lueth*, 498 F.3d at 797 n. 3; *Del Raine v. Carlson*, 826 F.2d 698, 703 (7th Cir. 1987).

Despite language to the contrary in Eleventh Circuit caselaw, the undersigned concludes

that the requirement that a federal prisoner must exhaust administrative remedies before seeking

habeas relief under § 2241 is not jurisdictional.  As a result, this court need not consider the

exhaustion issues contested by the parties before addressing the merits of Humphreys' claims in

this instance.

## B.     Claims Based on a Purported Breach of the Plea Agreement

To the extent that Humphreys seeks relief from his plea and sentencing, including that the

prosecutor breached the plea agreement in that he should have received concurrent sentences and

the due process clause was violated, the court finds he is not entitled to any relief.

---

Even where the PLRA does apply, its exhaustion requirement, while statutory, is a nonjurisdictional defense, which courts are expressly authorized to bypass if they prefer to deny relief on the merits.  *See* 42 U.S.C. § 1997e(c)(2); *Woodford*, 548 U.S. at 101; *Jones*, 549 U.S. at 212.

The general habeas statute authorizes "district courts ... within their respective jurisdictions" to grant writs of habeas corpus to prisoners who are "in custody in violation of the Constitution or law or treaties of the United States. 28 U.S.C. § 2241. Jurisdiction to hear such habeas actions challenging present physical confinement is generally limited to the federal district court in the district in which the petitioner is confined. *Rumsfeld v. Padilla*, 542 U.S. 426, 443-44 (2004). However, when a prisoner seeks post-conviction relief based on a challenge to the validity of his federal conviction or sentence, he generally must do so by filing a § 2255 motion "to vacate, set aside or correct the sentence," 28 U.S.C. § 2255(a), which must be filed in the district court that sentenced him. *Antonelli v. Warden, USP Atlanta*, 542 F.3d 1348, 1351 (11th Cir. 2008); *Wofford v. Scott*, 177 F.3d 1236, 1239-42 (11th Cir. 1999); *McGhee v. Hanberry*, 604 F.2d 9, 10 (5th Cir. 1979)[11]; *see also United States v. Hayman*, 342 U.S. 205, 210-19 (1952). Once he has filed his initial § 2255 motion, he is barred from making second and successive motions except where his claim relies upon the existence of newly discovered evidence or a new rule of retroactively applicable constitutional law. *See* 28 U.S.C. § 2255(h); *United States v. Diaz-Clark*, 292 F.3d 1310, 1316 (11th Cir.2002).

Ordinarily, a prisoner cannot seek a writ of habeas corpus under § 2241 to assert a claim attacking his federal sentence or conviction. *Antonelli*, 542 F.3d at 1351; *Wofford, supra*. However, § 2255 contains a limited "savings clause" that authorizes federal prisoners to seek post-conviction relief under the general habeas statute when it "appears that the remedy by [§ 2255] motion is inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e); *see Gilbert v. United States*, 640 F.3d 1293 (11th Cir. 2011) (en banc). Generally, "a petitioner who has filed a previous § 2255 motion and been denied may not simply file a petition

---

[11] The Eleventh Circuit has adopted as precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

under § 2241." *Gilbert*, 640 F.3d at 1308.  The burden is on the movant to establish the

inadequacy or ineffectiveness of the § 2255 remedy.  *Bryant v. Warden*, 738 F.3d 1253, 1262

(11th Cir. 2013).  The savings clause is a jurisdictional provision that must be met in order for

the claims to survive dismissal.  *Id.* at 1271.  "The statutory bar on successive § 2255 motions,

standing alone, does not render that section inadequate or ineffective within the meaning of

§ 2255(e)'s savings clause."  *United States v. Nickson*, 553 F. App'x 866, 869 (11th Cir. 2014),

citing *Gilbert*, 640 F.3d at 1308.

Humphreys is, in part, unmistakably challenging the validity his federal conviction to the

extent he alleges complaints concerning his plea, the conduct of the prosecutor, ineffective

assistance of counsel, and due process violations.  These typically must be challenged pursuant to

a § 2255 motion.  It is also evident that he has attempted to challenge his plea and sentence in

prior proceedings in Tennessee, which were denied.  What he cannot do at this juncture is use

§ 2241 as a vehicle to present these claims which are procedurally barred from review under §

2255.  This is so because the trial court found that his 2255 motion was time-barred.

*Humphreys*, 2008 WL 4601577.  Humphreys has not demonstrated the inadequacy or

ineffectiveness of § 2555 to warrant consideration under § 2241.

To the extent he argues that he should be able to proceed in this action because he did not

learn of his time credit problems until February 15, 2012, the court is not impressed.  (See Doc. 9

at 3).  When Humphreys was sentenced, there is no evidence before the court that Judge Edgar

intended that he receive concurrent sentencing.  Any challenge to his plea and sentence

concerning counsel's purported ineffectiveness, a breach of the plea agreement by the prosecutor,

and concurrent sentencing should have been advanced while the proceedings concerning his

Tennessee § 2255 motion were pending in the federal courts of that state.  Humphreys' argument

that he had not really concentrated on the date of release because it was so far away, is not sufficient to open the portal to § 2241 review in this case.[12]

To the extent he blames the conduct of the United States Marshals as an impediment to his perfecting an ineffective assistance of counsel challenge pursuant to § 2255, the claim is without merit for a number of reasons.  First, despite being afforded various opportunities over the years to articulate the factual basis concerning exactly what documents or evidence was lost, Humphreys has failed to do so.  For instance, the § 2255 Court in Tennessee ordered Humphreys to submit copies of all documents and an affidavit supporting his claim that the petition was timely and that his attorney made misrepresentations.  *Humphreys*, 2008 WL 4601577 at *2.  However, he failed to submit pertinent facts.  *Id*. at *4-5.  Additionally, Humphreys has filed three responses in this case, offering him the opportunity to file any supporting documentation or affidavits as to what evidence was lost and the impact of the same, yet he has not done so.  Second, upon a review of the record, there is no showing of any prejudice as a result of the purported loss of material information.

## C.    Manner of Service of Sentence

Humphreys also complains that he was exposed to an installment sentence due to his release to the "free world" from state custody instead of being surrendered to the United States Marshals for service of the remainder of his federal sentence.  In support of this claim, he argues that his case is similar to the defendant in *United States v. Mercedes*, 179 F.R.D. 136 (S.D.N.Y. 1998).  In that case, the petitioner was sentenced in state court to a sentence of 42-months to life and he was committed to state prison.  Thereafter, he pled guilty in federal court and received, *inter alia*, a 30-month sentence to be served after he completed the state sentence.  He was

---

[12]    Humphreys notes that it is "[n]ot healthy to dwell on such a far away date."  (Doc. 9 at 3 of 26).

returned to state custody and released on parole without being turned over to the federal authorities.  He served his parole.  He petitioned the federal court to vacate his sentence premised on the failure of the Government to incarcerate him for the three years after his conditional release.  The court granted the motion.  *Id*. at 137.  It noted that

> a governments delay in executing a sentence may constitute a "waiver" of jurisdiction over an individual under an otherwise valid criminal sentence, such that the "fundamental principles of liberty and justice" secured by the Due Process Clause of the Fifth Amendment would be violated by requiring that individual to serve the sentence.  *See Shelton v. Ciccone*, 578 F.2d 1241, 1244 (8th Cir. 1978); *Piper v. Estelle*, 485 F.2d 245, 246 (5th Cir. 1973); *Shields v. Beto*, 370 F.2d 1003, 1005 (5th Cir. 1967); *United States v. Merritt*, 478 F. Supp. 804, 806–07 (D.D.C. 1979).

> This "waiver" theory encourages responsibility and accountability on the part of the government, deters the arbitrary exercise of power, and secures the prompt punishment and rehabilitation of those convicted of crimes.  *Shelton*, 578 F.2d 1245.  The theory is "based on the philosophy that a defendant should be allowed to do his time, live down his past, and reestablish himself."  *Id.*  Delayed execution of a sentence interrupts the defendant's reintegration into the community and thus frustrates effective rehabilitation.  *See id.*

> In order to establish such a waiver, however, "it is not sufficient to prove official conduct that merely evidences a lack of eager pursuit or even arguable lack of interest."  *Piper*, 485 F.2d at 246; *see Mercedes*, 1997 WL 122785 at *3.  Simple negligence in failing to file or improperly filing a detainer with state authorities is not sufficient to deprive the Government of jurisdiction. *See Shelton*, 518 F.2d at 1244; [*United States v.*] *Mercedes*, 1997 WL 122785 at *4 [(S.D.N.Y. 1997)].

*United States v. Mercedes*, 1997 WL 458740, *2 (S.D.N.Y. 1997).  The court also stated:

> Although the degree of the Government's negligence in the erroneous release of a prisoner is central to the inquiry, other factors are also pertinent to determining whether the delayed execution of a sentence violates due process.  Factors to be considered include the length of the government's delay in correcting its error, the reasons for the delay, the petitioner's culpability for or knowledge of the error, the prisoner's reasonable expectations based on the release, and the prejudice to prisoner resulting from delay in correcting the error....

Id. (citations omitted).

In *Shields v. Beto*, 370 F.2d 1003 (5th Cir. 1967), the defendant was "furloughed"[13] from prison in Texas to serve a Louisiana sentence after serving only a year of a forty year sentence. Texas did not place a detainer on him, but when he was convicted 28 years later on a forgery offense, Texas attempted to add the unserved thirty-nine years to his new sentence.  The court held such conduct constituted a waiver of jurisdiction over him.  *Shields*, 370 F.2d at 1005.  The Fifth Circuit has repeatedly limited its holding in *Shields* to the extreme facts presented in that case.  *See Sledge v. Director, TDCJ-CID*, 2014 WL. 869356, * (E.D. Tex. 2014) (citing *United States v. Moore*, 129 F.3d 609, 1907 WL 681052, at *3 (5th Cir. Oct. 6, 1997) (unpublished) (holding that relief was not available for a petitioner ordered to surrender more than three years after the appellate process was completed); *Piper v. Estelle*, 485 F.2d 245, 246 (5th Cir. 1973) (holding that a delay of twenty-two months between parole revocation and detainer did not violate the petitioner's constitutional rights); *Clifton v. Beto*, 298 F. Supp. 1384, 1388 (S.D. Tex. 1968) (finding that a ten-year period of state inaction did not waive the state's jurisdiction or offend due process), *aff'd*, 411 F.2d 1226 (5th Cir. 1969); *see also United States v. Barfield*, 396 F.3d 1144 (11th Cir.2005) (holding that an eight-year delay did not prevent the government's enforcement of petitioner's sentence)).

> To make a claim based on *Shields*, it is insufficient to prove that officials failed to eagerly pursue the petitioner, or lacked interest in him.  *Id.*  Rather, the petitioner must show that the government's action was so affirmatively wrong, or its inaction so grossly negligent, that it would be "unequivocally inconsistent with 'fundamental principles of liberty and justice' to require a legal sentence to be served in the aftermath of such action or inaction."

---

[13]/   The governor of Texas granted Shields a sixty-day furlough after Shields served one year of his forty-year term.  *Shields*, 370 F.2d at 1004.  Instead of taking the furlough, Shields signed a waiver of extradition and went to Louisiana to finish serving a Louisiana prison term for escape.  Texas did not place a detainer for Shields at the Louisiana penitentiary.  Louisiana released Shields on parole in 1944, and removed him form parole supervision in 1948.  In 1960, Shields was convicted in a federal district court in Tennessee and sentenced to five years of confinement.  When he was paroled in 1962, Shields was transferred to Texas where he was convicted on a new charge and sentenced to two years of imprisonment, and ordered to serve the thirty-nine years remaining on the prior Texas sentence.  *Id.*

*Adi v. Warden, Giles W. Dalby Facility*, 2008 WL 4966034, *2 (E.D. Texas. 2008); *see Piper v. Estelle*, 485 F.2d 245, 246 (5th Cir. 1973).

Neither the record nor Humphreys' allegations in this case demonstrate any affirmative misconduct or callous neglect on the part of the United States.  At most, it appears to be an inadvertent failure to effectuate the requisite steps to assure his turnover to the United States.  Additionally, the lapse of time between the release and the arrest of Humphreys was short.  Humphreys was released on May 23, 2006, and re-arrested on June 9, 2006 – about two weeks later.  (Ex. 3 at ¶¶ 7-8).  This is in no way sufficient to constitute a due process violation in this circuit.  Accordingly, Humphreys' claim that he is due to be released because he is serving an improper installment sentence that violates due process is without merit.

**D.     *Nunc Pro Tunc* Sentencing**

To the extent Humphreys claims he is entitled to be credited for the time he spent in the custody of Tennessee authorities because the state court judge ordered his state sentence to run concurrent with his federal sentence, the claim is without merit for a number of reasons.

First, Humphreys' federal sentence did not commence until he arrived in the custody of the BOP in June 2006.  *See Weeks v. Fleming*, 301 F.3d 1175, 1179-80 (10th Cir. 2002).  Second, while, Humphreys can request *num pro tunc* designation, *see Barded v. Keohane*, 921 F.2d 476, 483-84 (3rd Cir. 1990), the state judge's intent is not controlling.  *See Leal v. Tombone*, 341 F.3d 427, 429 (10th Cir. 2003); *see also Hunter v. Tamez*, 622 F.3d 427 (5th Cir. 2010) (following *Tombone*).  Third, it is the BOP that is "authorized to determine where a federal sentence will be served, when it begins, and, in certain respects, how long it will last."  *United States v. Cibrian*, 374 F. App'x 524, 429-30 (5th Cir. 2010) (citing 18 U.S.C. § 3621; *see United States v. Wilson*,

503 U.S. 329, 337 (1992) (Attorney General, through the BOP, computes the amount of §

3585(b) credit after the defendant has begun to serve his sentence) (other citations omitted).

BOP Program Statement ("PS") 5160.05 (Designation of State Institution for Service of

Federal Sentence)[14] provides, in part, that the BOP shall consider requests such as the one in this

case from the defendant concerning the judgment of the Hamilton County Criminal Court Judge.

(Ex. 12 at 5-8).[15]  Because Judge Edgar did not reference the state charges, BOP contacted him as

required by the program statement.  Judge Edgar responded that premised on Humphreys'

"extremely lengthy criminal record," the federal sentence he imposed would most likely have

been imposed consecutive to the state sentence.[16]  (Ex. 3 at ¶ 11; Ex. 14).  As noted above, he

did, however, "leave it to [the BOP] to make any decision that [it believed] is warranted about a

retroactive designation."  (*Id.*)  Thereupon, the BOP reviewed Humphreys' case under § 3621(b)

and decided that retroactive concurrent designation was not appropriate.  (Ex. 3 at ¶ 12; Ex. 15).

Accordingly, because a state court has no authority to order how a federal sentence is to be

completed or served, the final determination rests within the discretion of the BOP after it

---

[14]/     Located herein at Ex. 12.

[15]/     Referencing this Program Statement, the court has used the page numbers on the Statement and not the electronic numbers assigned by the Clerk of the Court.

[16]/     In *Taylor v. Sawyer*,

the Ninth Circuit rejected a claim similar to [Petitioner] and quoted language from the concurrence in *Del Guzzi*, which stated:

> Federal prison officials are under no obligation to, and may well refuse to, follow the recommendation of state sentencing judges that a prisoner be transported to a federal facility.  Moreover, concurrent sentences imposed by state judges are nothing more than recommendations to federal officials.  Those officials remain free to turn those concurrent sentences into consecutive sentences by refusing to accept the state prisoner until the completion of the state sentence and refusing to credit the time the prisoner spent in state custody.

*Leal* . 341 F.3d at 429, n. 13 (citing *Taylor v. Sawyer*, 284 F.3d 1143 (9th Cir. 2002) (quoting *Del Guzzi v. United States*, 980 F.2d 1270, 1272-73 (Norris, J., concurring)).

complies with the requirements of the PS.  *See Leal*, 341 F.3d 427 (due process does not require

that a defendant be taken to federal prison to serve his concurrent state sentence); *see also*

*McCarthy v. Doe*, 146 F.3d 118, 123 (2d Cir. 1998) (the BOP "should exercise its discretion

under § 3621(b) to review petitioner's request for *nunc pro tunc* designation").  Thus, he is

entitled to no relief, including his request for *nunc pro tunc* credit.

**E.      Inability to Perfect a 2255**

Lastly, Humphrey complains that the government created an impediment to his perfecting

his § 2255 motion.  (Doc. 1 at 7).  Under § 2255(f)(2), the one-year period of limitations for

filing a motion to attack a conviction or sentence commences on "the date on which the

impediment to making a motion created by government action in violation of the Constitution or

laws of the United State is removed, if the movant was prevented from making a motion by such

governmental action."  28 U.S.C. § 2255(f)(2).  "A movant must show that the alleged

impediment 'caused an actual harm, or in other words, unconstitutionally prevented him from

exercising that fundamental right of access to the courts in order to attack his sentence or to

challenge the conditions of his confinement." *See Williams v. United States*, 360 F. App'x 34, 36

(11th Cir. 2010) (noting that "Williams failed to show that the prison officials' failure to provide

him with his legal files was an unconstitutional impediment that prevented him from accessing

the court system by timely filing a § 2255 motion") (quoting *Akins v. United States*, 204 F.3d

1086, 1090 (11th Cir.2000)).

Humphreys is entitled to no relief on this claim for three reasons.  First, such a claim had

to be raised in his § 2255 proceeding in Tennessee, not in this court after the fact.  Second, he has

failed to demonstrate that his arrest by the United States Marshals was unlawful governmental

action and that it directly led to the loss of his property.  Second, he has failed, as noted above, to demonstrate any prejudice resulting from not having his legal materials.

## IV.     RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that Humphreys' petition for habeas relief under 28 U.S.C. § 2241 be **DENIED**.

### <u>Notice of Right to Object</u>

Any party who objects to this report and recommendation must, within fourteen (14) days of the date on which it is entered, file specific written objections with the clerk of this court.  Any objections to the failure of the magistrate judge to address any contention raised in the petition also must be included.  Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the magistrate judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (*en banc*).  In order to challenge the findings of the magistrate judge, a party must file with the clerk of the court written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge shall make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge.  The district judge, however, need conduct a hearing only in his discretion or if required by law, and may consider the record developed before the magistrate judge, making his own determination on the

26

basis of that record.  The district judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Objections not meeting the specificity requirement set out above will not be considered by a district judge.  A party may not appeal a magistrate judge's recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a district judge.

**DONE**, this 27th day of August, 2014.

**JOHN E. OTT**
Chief United States Magistrate Judge